# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

AUSTIN DESIGN INC.          )
605 Colwyn Terrace          )
Deerfield, IL 60016,        )
                            )
                 Plaintiff, )
                            )
        v.                  )
                            )
                            )
THE TOPPS COMPANY, INC.     )    **CIVIL ACTION NO. _____**
One Whitehall Street        )
New York, NY 10004,         )
                            )
                            )    **JURY TRIAL DEMANDED**
                Defendant,  )
                            )
and                         )
                            )
                            )
                            )
DOES 1-100,                 )
                            )
               Defendants   )
                            )

## COMPLAINT AND JURY DEMAND

Plaintiff Austin Design Inc. (hereinafter "Austin Design" or "Plaintiff") hereby brings this Complaint against Defendant The Topps Company, Inc. (hereinafter "Topps" or "Defendant") and DOES 1 through 100, seeking damages from Defendant for its willful and malicious infringement of Plaintiff's copyright and for conversion, unjust enrichment, breach of implied contract, fraud and misappropriation of trade secrets.

## PARTIES

1.     Austin Design was a company incorporated and licensed to do business in the state of Ohio, with its corporate address located at 6426 Winding Oaks Drive, Cincinnati, Ohio 45044. Currently, Austin Design's principal place of business is located at 605 Colwyn Terrace, Deerfield,

Illinois 60015.[1] Austin Design's Disclosure Statement is filed concurrently with this Complaint, as required by Fed. R. Civ. P. 7.1.

2.      The Topps Company, Inc. is a Delaware corporation, with its principal place of business located at One Whitehall Street, New York, New York 10004.

3.      The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as Does 1 through 100, including distributors and retailers of Topps products such as Match-Ems™, but are unknown to Austin Design who therefore sues said Defendants by such fictitious name. Austin Design will amend this Complaint to allege their true names and capacities when such have been ascertained. Upon information and belief, each of the Doe Defendants is responsible in some manner for the occurrences herein alleged, and Austin Design's injuries as herein alleged were proximately caused by such Defendants' acts or omissions.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over the copyright infringement claim in this matter pursuant to 17 U.S.C § 101 *et seq*.

5.      This Court has supplemental jurisdiction over the state law claims for conversion, unjust enrichment, breach of implied contract, fraud, unfair competition, and misappropriation of trade secrets pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the federal claims within the Court's original jurisdiction that such state law claims form part of the same case or controversy, under Article III of the United States Constitution.

6.      This Court further has original jurisdiction over all of the claims asserted in this

---

[1] At all times relevant to this Complaint, Austin Design Inc.'s principal place of business was located at 6426 Winding Oaks Drive, Cincinnati, Ohio 45055.

2

matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship of the parties and the amount in question exceeds $75,000.00.

7.    This Court has personal jurisdiction over Defendant under Fed. R. Civ. P. 4 because Defendant's principal place of business located at One Whitehall Street, New York, New York 10004.

8.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391.

**FACTUAL BACKGROUND**

9.    Since 2007, Austin Design has been in the business of, among other things, inventing, developing, and designing products for the toy, game, and candy industries.

10.    John Austin is the CEO of Austin Design ("Mr. Austin"), and he has designed well over 1,000 toys and games for popular brands such as Milton Bradley, Marvel, Play Doh, and Nerf. His expertise is in future blue-sky concepts and predicting trends and emerging technologies.

11.    At some time during or prior to June of 2010, Colin Walton, then Entertainment Licensing Coordinator for Topps, became aware of Mr. Austin's work by viewing a sample of similar on Core77.com, a website where designers can submit portfolios.

12.    In June of 2010, Mr. Walton sent an unsolicited email to Mr. Austin, inviting him to submit new concepts and innovations for consideration by its candy division, Bazooka Candy Brands.

13.    In the unsolicited e-mail, Mr. Walton communicated to Mr. Austin that "[w]e are currently looking for new innovation and we want you to be a part of our efforts as we value your talent and creativity."

14.    Mr. Walton further communicated that Topps would send Mr. Austin a "confidential brief" to provide guidance on what kinds of innovations Topps was looking for, as

well as a Mutual Nondisclosure Agreement.

15.     On June 10, Ira Friedman, then Vice President of Global Licensing for Topps, emailed Mr. Austin with the company's "New Product External Inventor Brief" detailing submission requirements and a Mutual Nondisclosure Agreement ("Nondisclosure Agreement"), which the parties executed on July 6, 2010. (A true and accurate copy of the Nondisclosure Agreement is attached as Exhibit 1.)

16.     On June 21, 2010, Mr. Austin sent an email to Mr. Friedman asking a number of questions, including the following: "What are your royalty arrangements?"

17.     On June 24, 2010, Mr. Walton sent Mr. Austin an email responding to the June 21, 2010 correspondence, and assuring him that Topps would timely respond to all submissions and operate in good faith in negotiating a licensing agreement with royalties within generally accepted industry practices in the event Topps elected to pursue one or more of Austin Design's submissions.

18.     It was understood and agreed between Mr. Austin and representatives of Topps that, in exchange for the opportunity to review Austin Design's proprietary and innovative designs, and consistent with "generally accepted industry practices," Topps would not use said designs without duly compensating Mr. Austin.

19.     In light of the correspondences in paragraphs 12 through 17 above, and the agreement referenced in paragraph 18 above, Austin Design was led to believe that Topps solicited its innovative designs for the purpose of entering into a written contract with the company if it decided to move forward with any products based on such designs.

20.     As a result, on July 6, 2010, Mr. Austin responded to Mr. Walton's reassurances by sending the signed Nondisclosure Agreement and preparing a presentation.

21.     On July 7, 2010, Mr. Walton responded with the fully executed Nondisclosure Agreement, stating, "We look forward to seeing your presentation."

22.     From July 12, 2010, up until January 1, 2011, Mr. Austin, on behalf of Austin Design, continued to submit a number of drawings of individual concepts and designs (collectively "Designs") to Topps via Mr. Walton and Mr. Friedman for consideration, including but not limited to forty-two (42) individual candy concepts and eleven (11) trading card concepts.

23.     Included in one of these submissions was Mr. Austin's detailed drawing and design for a novel custom gummy called LinkIts, a bite-sized, interlocking candy that allowed consumers to connect gummies to create various flavor combinations, such as fruit punch and caramel apple ("LinkIts Submission"). (A true and accurate copy of the LinkIts Submission is attached as Exhibit 2.)

24.     Pursuant to the Nondisclosure Agreement, the Designs and LinkIts Submission were deemed "Confidential Information," which Topps agreed not to use or disclose except for purposes of pursuing a business transaction with Austin Design.

25.     After receiving receipt of all submissions and brief feedback from Mr. Walton via email on August 19, 2010 on the Designs, Topps and Mr. Austin had no further correspondence with respect to the LinkIts Submission.

26.     Notwithstanding the correspondences and agreement referenced in Paragraphs 12 through 18 above, Topps never intended to enter into a business transaction with Austin Design, even if it ultimately decided to use the Designs.

27.     Topps used the correspondences and agreement referenced in Paragraphs 12 through 18 above to induce Austin Design into providing the proprietary Designs to Topps, with the intention of utilizing the designs without Austin Design's authorization or compensation upon

expiration of the Nondisclosure Agreement.

28. Indeed, after inducing Austin Design to provide additional Designs on January 1, 2011, Topps stopped responding to Mr. Austin's correspondences entirely and provided no further feedback on whether the company would utilize his designs.

29. Austin Design only provided Topps with the Designs based upon the false assurances made by representatives of Topps, as recounted in Paragraphs 12 through 18 above.

30. As a result of the foregoing, Topps was able to obtain and ultimately utilize the Designs, and in particular, the "LinkIts" submission without compensating Austin Design for its time and creative efforts.

31. Upon information and belief, Topps was engaged in consumer testing and research for an interlocking fruit flavored gummy based on Austin Design's LinkIts Submission in June of 2016, reviving the terms of the agreement referenced in Paragraph 18 by taking affirmative action to use Austin Design's LinkIts Submission.

32. Upon information and belief, Topps engaged Flint & Steel in June of 2016 to further develop Austin Design's LinkIts concept without authorization from Austin Design.

33. The LinkIts Submission is an original work of authorship that is protected under United States Copyright Law 17 U.S.C. § 101 *et seq*.

34. Austin Design is the sole owner of the copyright in the LinkIts Submission.

35. On April 10, 2019, Austin Design applied electronically to register the copyright in the LinkIts Submission with the United States Copyright Office on an expedited basis. Such Certificate of Registration was recently issued by the Copyright Office with a Registration Number of VAu 1-349-932 and an effective date of April 10, 2019. (A true copy of the Certificate of Registration is attached hereto as Exhibit 3.)

36.     On March 19, 2018, Bazooka Candy Brands, a division of Topps, issued a press release announcing the launch of Match-Ems™, an "interlocking fruit flavored gummy treat that offers a uniquely customizable flavor experience" ("Press Release"). (A true and accurate copy of the press release is attached hereto as Exhibit 4.)

37.     In the Press Release, Topps stated "We used new 3D gummy technology and our flavor expertise to create fun interlocking shapes that taste great when combined. Who would have guessed that a Banana and Orange gummy together could taste like Bubble Gum?"

38.     The Press Release indicated that Match-Ems™ would be available "at top retailers within the Mass, Convenience, and Grocery Channels" and "supported by a national, integrated marketing campaign including a television ad that combines animation and live action entitled 'Extra Hands'" to be aired on Cartoon Network, Nickelodeon, and Nicktoons.

39.     The Press Release stated that the "launch of Match-Ems™ is also supported with an interactive game that allows fans to continue the flavor fun online, exclusively at www.CandyMania.com and available to play now."

40.     Upon information and belief, Topps distributed Match-Ems™ to a number of retail stores and online distributors (individually and collectively, the "Customers").

41.     Upon information and belief, Match-Ems™ are available for purchase at a number of Customer retail stores.

42.     Upon information and belief, Match-Ems™ are currently available for online purchase through a number of online Customers.

43.     Match-Ems™ are substantially similar to Austin Design's LinkIts Submission in every meaningful way, from initial concept to flavor combinations, to marketing design.

44.     Match-Ems™ are bite sized geometric gummies that interlock to create different

flavor combinations, which is an identical concept to the LinkIts Submission.

45.     The Match-Ems™ packaging features a fruit punch flavor combination, which is also the featured flavor combination in the LinkIts Submission.

46.     The word "Match" appears in white font with a blue outline on the Match-Ems™ packaging, just as the word "LinkIts" appears in white font with a blue outline on the LinkIts Submission.

47.     The Match-Ems™ packaging uses yellow font with a blue outline as a contrasting color, just as is featured in the LinkIts Submission.

48.     To demonstrate the interlocking nature of the candy, the words "Match" and "Ems" are depicted with an arrow connecting the words together on the packaging and advertising materials, which is substantially similar to the way Austin Design connected the words "Link" and "Its" in its LinkIts Submission.

49.     Austin Design never granted any of the Customers a license to reproduce, display, or distribute any of the designs featured in the LinkIts Submission.

50.     Upon information and belief, each of the Customers has infringed and continues to infringe upon Austin Design's copyright in its LinkIts Submission by distributing Match-Ems™ without Austin Design's consent or approval.

51.     Upon information and belief, Topps willfully and maliciously copied and misappropriated Austin Design's LinkIts Submission in its creation of Match-Ems™ without authorization from Austin Design.

**COUNT I**
**(Direct Copyright Infringement, 17 U.S.C. § 501, Against Topps and Does 1-100)**

52.     Austin Design restates and re-alleges by reference the allegations contained in the preceding paragraphs as if fully restated herein.

53. Austin Design is the sole author of the LinkIts Submission. Each aspect of the LinkIts Submission is comprised of wholly original material and it has been deemed copyrightable subject matter under the copyright laws of the United States.

54. Topps had access to Austin Design's LinkIts Submission and knowingly and willfully copied the LinkIts Submission without the permission, license, or consent of Austin Design.

55. Topps continued to willfully infringe upon the LinkIts Submission by distributing Match-Ems™ to the Customers.

56. Each of the Customers has infringed and on information and belief continues to infringe upon Austin Design's copyrights in the LinkIts Submission by displaying and distributing Match-Ems™ without Austin Design's consent, approval, or license.

57. Topps' activities complained of herein constitute willful copyright infringement in violation of the exclusive rights of Austin Design under 17 U.S.C. § 101 *et seq*.

58. Pursuant to 17 U.S.C. § 504(b), Austin Designs is entitled to its actual damages, including Topps' profits from infringement in connection with Match-Ems™ and the Customers' profits from infringement in connection with Match-Ems™, in an amount in excess of $75,000 to be proven at trial, plus prejudgment and postjudgment interests and costs.

59. Alternatively, at Austin Design's election pursuant to 17 U.S.C. § 504(c) Austin Design is entitled to recover up to $150,000 in statutory damages for each infringement of the LinkIts Submission for which the first act of infringement of the same kind by a particular defendant occurred on or after the date of registration. On information and belief, one or more of the Customers' first act of infringement of the same kind may have occurred on or after the date of registration with respect to the LinkIts Submission. Through discovery, Austin Design expects

9

to ascertain the specific information regarding each of the Customers' acts of infringement in order to determine whether Austin Design is entitled to elect statutory damages with respect to the LinkIts Submission.

60.     Topps' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Austin Design great and irreparable injury that cannot fully be compensated or measured in money. Austin Design has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Austin Design is entitled to injunctive relief prohibiting Topps and its Customers from further infringing Austin Design's copyrights, ordering Topps to impound and destroy all Match-Ems™ inventory and to recall from all Customers all Match-Ems™ inventory.

61.     Austin Design is entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505 if with respect to LinkIts Submission, the first act of infringement of the same kind by a particular defendant occurred on or after the date of registration, and prejudgment and postjudgment interest according to law. Through discovery, Austin Design expects to ascertain the specific information regarding each of the Customers' acts of infringement in order to determine whether Austin Design is entitled to seek attorneys' fees with respect to the LinkIts Submission.

## COUNT II
**(Vicarious Copyright Infringement, 17 U.S.C. § 501, Against Topps and Does 1-100)**

62.     Austin Design restates and re-alleges by reference the allegations contained in the preceding paragraphs as if fully restated herein.

63.     The Customers who distributed Match-Ems™ did so without the consent, approval, or license of Austin Design.

64.     Each unauthorized distribution of Match-Ems™ by each Customer constitutes a separate and distinct act of direct infringement.

65.     Topps had and continues to have the right and ability to supervise and control the

infringing acts of the Customers who have directly infringed the LinkIts Submission in connection with Match-Ems™. Topps had and has the legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so, considering that the Customers were/are selling Match-Ems™, which they received directly from Topps.

66.    Topps obtained a direct financial benefit from the infringing activities of the Customers with respect to the distribution of Match-Ems™. The Customers' display and advertisement of Match-Ems™ drew retail consumers to purchase the Match-Ems™, which resulted in additional revenue to Topps.

67.    The actions of Topps constitute vicarious copyright infringement.

68.    Austin Design is informed and believes that the foregoing acts of infringement have been willful and intentional, in disregard of and with indifference to its rights.

69.    Pursuant to 17 U.S.C. § 504(b), Austin Designs is entitled to its actual damages, including Topps' profits from infringement in connection with Match-Ems™ and the Customers' profits from infringement in connection with Match-Ems™, in an amount in excess of $75,000 to be proven at trial, plus prejudgment and postjudgment interests and costs.

70.    Alternatively, at Austin Design's election pursuant to 17 U.S.C. § 504(c) Austin Design is entitled to recover up to $150,000 in statutory damages for each infringement of the LinkIts Submission for which the first act of infringement of the same kind by a particular defendant occurred on or after the date of registration.  On information and belief, one or more of the Customers' first act of infringement of the same kind may have occurred on or after the date of registration with respect to the LinkIts Submission. Through discovery, Austin Design expects to ascertain the specific information regarding each of the Customers' acts of infringement in order to determine whether Austin Design is entitled to elect statutory damages with respect to the

11

LinkIts Submission.

71.     Topps' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Austin Design great and irreparable injury that cannot fully be compensated or measured in money. Austin Design has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Austin Design is entitled to injunctive relief prohibiting Topps and its Customers from further infringing Austin Design's copyrights, ordering Topps to impound and destroy all Match-Ems™ inventory and to recall from all Customers all Match-Ems™ inventory.

72.     Austin Design is entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505 if with respect to LinkIts Submission, the first act of infringement of the same kind by a particular defendant occurred on or after the date of registration, and prejudgment and postjudgment interest according to law. Through discovery, Austin Design expects to ascertain the specific information regarding each of the Customers' acts of infringement in order to determine whether Austin Design is entitled to seek attorneys' fees with respect to the LinkIts Submission.

**COUNT III**
**(Contributory Copyright Infringement, 17 U.S.C. § 501, Against Topps and Does 1-100)**

73.     Austin Design restates and re-alleges by reference the allegations contained in the preceding paragraphs as if fully restated herein.

74.     Upon information and belief, Customers displayed publicly and distributed products based on the LinkIts Submission, including Match-Ems™, as well as created derivative works to advertise and market products based on the LinkIts Submission, including Match-Ems™.

75.     Upon information and belief, the Customers displayed the products based on the LinkIts Submission, including Match-Ems™, and distributed those derivative works without the consent, approval, or license of Austin Design.

76.     Each unauthorized reproduction, creation of a derivative work, public display or

12

distribution of one of the products based on the LinkIts Submission, including Match-Ems™, by each Customer constitutes a separate and distinct act of direct infringement.

77.     Through its conduct alleged herein, Topps knowingly and systematically induced, caused, materially contributed to, actively encouraged and participated in the infringing reproduction, creation of derivative works, public display, and distribution of the products based on the LinkIts Submission, including Match-Ems™. Specifically, Topps sold each of the infringing products, including Match-Ems™, to the Customers with the sole intention of the Customers then displaying publicly and distributing to the public the infringing products, based on one or more of the LinkIts Submission. Furthermore, Topps distributed the products, including Match-Ems™, for the express purpose of the Customers creating their own derivative work advertising and marketing materials, inclusive of the products, including Match-Ems™, which the Customers then reproduced, publicly displayed, and distributed.

78.     Topps knew or should have known that by distributing and making these infringing products, including Match-Ems™, available to them, the Customers would be publicly displaying and distributing the infringing products, including Match-Ems™.

79.     Topps' actions constitute contributory copyright infringement.

80.     Topps has benefited from its contributory infringement of each of the infringing products, including Match-Ems™, in the form of product sales, brand promotion, and corporate good will.

81.     As a result of Topps' contributory infringement, Austin Design has suffered monetary damages as well as damages to its goodwill and reputation.

82.     Austin Design is informed and believes that the foregoing acts of infringement have been willful and intentional, in disregard of and with indifference to its rights.

13

83. Pursuant to 17 U.S.C. § 504(b), Austin Design is entitled to its actual damages, including Topps and each of the Customer's profits from infringement in connection with the LinkIts Submission, including Match-Ems™, in an amount to be proven at trial.

84. Alternatively, at Austin Design's election pursuant to 17 U.S.C. § 504(c) Austin Design is entitled to recover up to $150,000 in statutory damages for each infringement of the LinkIts Submission for which the first act of infringement of the same kind by a particular defendant occurred on or after the date of registration. On information and belief, one or more of the Customers' first act of infringement of the same kind may have occurred on or after the date of registration with respect to the LinkIts Submission. Through discovery, Austin Design expects to ascertain the specific information regarding each of the Customers' acts of infringement in order to determine whether Austin Design is entitled to elect statutory damages with respect to the LinkIts Submission.

85. The Customers and Topps' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Austin Design great and irreparable injury that cannot fully be compensated or measured in money. Austin Design has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, Austin Design is entitled to injunctive relief prohibiting Topps and its Customers from further infringing Austin Design's copyrights, ordering Topps to impound and destroy all Match-Ems™ inventory and to recall from all Customers all Match-Ems™ inventory.

86. Austin Design is entitled to recover its attorneys' fees and costs pursuant to 17 U.S.C. § 505 if with respect to LinkIts Submission, the first act of infringement of the same kind by a particular defendant occurred on or after the date of registration, and prejudgment and postjudgment interest according to law. Through discovery, Austin Design expects to ascertain the specific information regarding each of the Customers' acts of infringement in order to determine

14

whether Austin Design is entitled to seek attorneys' fees with respect to the LinkIts Submission.

## COUNT IV
### (Conversion against Topps)

87.     Austin Design restates and re-alleges by reference the allegations contained in the preceding paragraphs as if fully restated herein.

88.     Upon information and belief, Topps wrongfully converted one or more of the Designs to create consumer products, including without limitation, Match-Ems™.

89.     Topps sold the products created based on one or more of the Designs, including without limitation Match-Ems™, at top Customers within the Mass, Convenience, and Grocery channels and online without Austin Design's consent.

90.     Austin Design has not received any benefit, monetary or otherwise, from the sale of any of Topps' products created based on one or more of the Designs, including without limitation, Match-Ems™.

91.     As a direct and proximate result of Topps' wrongful conversion and unauthorized acts, Austin Design has suffered damages in an amount in excess of $75,000 to be proven at trial, plus pre and post judgment interest and costs.

## COUNT V
### (Unjust Enrichment against Topps)

92.     Austin Design restates and re-alleges by reference the allegations contained in the preceding paragraphs as if fully restated herein.

93.     Topps wrongfully benefitted by way of its unauthorized use of the Designs and the LinkIts Submission in the creation and subsequent sale Topps' products, including without limitation, Match-Ems™.

94.     Austin Design has not received any compensation for the wrongful benefit derived

15

by Topps as a result of such sale.

95.    Topps has been unjustly enriched by its wrongful and unauthorized acts in excess of $75,000, the actual amount to be proven at trial, plus pre and post judgment interest and costs.

## COUNT VI
### (Misappropriation of Trade Secrets against Topps)

96.    Austin Design restates and re-alleges by reference the allegations contained in the preceding paragraphs as if fully restated herein.

97.    Austin Design shared its LinkIts Submission, a proprietary concept, with Topps pursuant to the Nondisclosure Agreement signed by the parties.

98.    Topps willfully and maliciously misappropriated the LinkIts Submission in its creation of Match-Ems™ without authorization from Austin Design.

99.    Topps is using that trade secret in breach of the agreement and confidential relationship with Austin Design.

100.    As a direct and proximate result of Topps' willful and malicious misappropriation, Austin Design has suffered damages in an amount in excess of $75,000 to be proven at trial and is additionally entitled to punitive or exemplary damages.

## COUNT VII
### (Fraud against Topps)

101.    Austin Design restates and re-alleges by reference the allegations contained in the preceding paragraphs as if fully restated herein.

102.    In its efforts to obtain and utilize the Designs without Austin Design's authorization or compensation, Topps made several representations to Mr. Austin regarding the company's alleged "good faith" intentions and royalty payment methodologies.

103.    Specifically, Topps reassured Austin Design that the company operates in good

16

faith, would evaluate the Designs with the intent of entering into a business transaction for any such Designs of interest, and would compensate Austin Design pursuant to "industry practices" if it ultimately utilized the Designs.

104. Topps' representations referenced in paragraphs 102 and 103 above were false. Indeed, Topps did not operate in good faith, never intended to enter into a business transaction with Austin Design, and had no intention of compensating Austin Design for the use of the Designs.

105. Topps had actual knowledge that the representations referenced in paragraphs 102 and 103 above were false, and intended to deceive Austin Design into believing that they were true in order to obtain access to the Designs.

106. Austin Design reasonably relied, to its detriment, upon the representations made by Topps, as referenced in paragraphs 102 and 103 above.

107. As a direct and proximate result of Topps' intentional misrepresentations or omissions, Austin Design suffered significant damages, and will continue to suffer such harm, damages and economic loss in the future.

**COUNT VIII**
**(Breach of Implied Contract against Topps)**

108. Austin Design restates and re-alleges by reference the allegations contained in the preceding paragraphs as if fully restated herein.

109. The parties understood that Austin Design only provided its Designs to Topps so that Topps could enter into a business transaction with Austin Design if it desired to utilize any such Designs.

110. The parties understood that operating in "good faith," and pursuant to "industry practices" meant that Topps would compensate Austin Design if it ultimately utilized the Designs.

17

111. When Austin Design provided Topps with copies of the Designs, which Topps then evaluated, the parties entered into an implied contract pursuant to the understandings referenced in paragraphs 109 and 110.

112. Topps ultimately utilized the Designs owned by Austin Design but failed to compensate Austin Design.

113. By not compensating Austin Design accordingly, Topps breached its implied contract.

114. As a direct and proximate result of Topps' breach of the contract alleged herein, Austin Design has been damaged, in an amount to be determined at trial.

115. Austin Design demands judgment against Topps for total unpaid amounts, and such other and further relief as may be just and proper.

## COUNT IX
### (Breach of Contract against Topps)

116. Austin Design restates and re-alleges by reference the allegations contained in the preceding paragraphs as if fully restated herein.

117. By developing products, including Match-Ems™, based on the LinkIts Submission and Designs, Topps revived the written contract between Topps and Austin Design.

118. As such, Topps was obligated to provide Austin Design with compensation for its LinkIts Submission and Designs per the terms of the written contract.

119. Topps failed to perform its obligations under the contract when it took Austin Design's LinkIts Submission and Designs without compensating Austin Design for the work.

120. Therefore, through its action and inaction, Topps has breached the terms of the written contract.

121. As a direct and proximate result of Topps' breach of the contract alleged herein,

18

Austin Design has been damaged, in an amount to be determined at trial.

122.    Austin Design demands judgment against Topps for total unpaid amounts, and such other and further relief as may be just and proper.

**WHEREFORE**, Austin Design prays for judgment against Defendants Topps and Does 1 through 100 as follows:

a)    That Defendants be enjoined during the pendency of this action, and permanently enjoined from infringing Austin Design's copyrights;

b)    That the Court enter an injunctive order pursuant to 17 U.S.C. § 502 to require Defendant Topps to recall all infringing inventory of Match-Ems™ from each and every distributor or Customers;

c)    That the Court enter an order of impoundment pursuant to 17 U.S.C. § 503 to impound and destroy all Match-Ems™ inventory that are in Defendant Topps or Does 1 through 100's possession, custody, or control, either presently or in the future as the result of returns or any recall;

d)    Order an accounting for Austin Design's damages and/or Topps' profits derived from and/or related to Defendant's direct, contributory, and vicarious infringement of Austin Design's copyright pursuant to 17 U.S.C. § 504(b); or, alternatively, at Austin Design's election, enhanced statutory damages pursuant to 17 U.S.C. § 504(c) for Defendant Topps and Does 1 through 100's willful infringement of Austin Design's copyrights with respect to each act of infringement for which the first act of infringement of the same kind by a particular defendant occurred on or after the date of registration;

19

e)    Order an accounting for Austin Design's damages related to the value of the converted property at the time of the conversion;

f)    Order an accounting for Austin Design's damages as a measure of Topps' profits derived from Defendant's unjust enrichment and misappropriation;

g)    Order an assessment of attorneys' fees, interest, and costs against Topps;

h)    Award Austin Design punitive or exemplary damages; and

i)    Award Austin Design such other relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Austin Design demands a trial by jury for all claims so triable.

Dated:  March 6, 2020

Respectfully submitted,

**AUSTIN DESIGN INC.,**
By its attorney,

*/s/ Govinda Davis*
Govinda Davis
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH 45202
govinda.davis@dinsmore.com
Tel.: (513) 977-8657
Fax: (513) 977-8141

*Counsel for Plaintiff Austin Design*